UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
JANE DOE,

                    Plaintiff,                **COMPLAINT**

        -against-                **Jury Trial Demanded**

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF CORRECTION, NYC CORRECTIONS
COMMISSIONER JOSEPH PONTE, INDIVIDUALLY AND
IN HIS OFFICAL CAPACITY AS COMMISSIONER OF
THE NEW YORK CITY DEPARTMENT OF CORRECTIONS,
NYC CORRECTIONS OFFICER STEVEN SANTIAGO,
INDIVIDUALLY AND IN HIS OFFICAL CAPACITY
AS A NEW YORK CITY CORRECTIONS OFFICER,
NYC CORRECTIONS OFFICER NANA OSEI,
INDIVIDUALLY AND IN HIS OFFICAL CAPACITY AS
A NEW YORK CITY CORRECTIONS OFFICER AND
NYC CORRECTIONS OFFICER JOHN DOE,
INDIVIDUALLY AND IN HIS OFFICAL CAPACITY
AS A NEW YORK CITY CORRECTIONS OFFICER,

                    Defendants.
-------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. §§ 1983 and 1988 and the Fifth, Eighth, and Fourteenth Amendments, to the United States Constitution, and the laws of the State of New York. Plaintiff's claims arise from a series of incidents that arose on or about September 2015, continuing until or about December 2016. Plaintiff seeks compensatory and punitive damages for deprivation of her Constitutional rights and an award of costs

and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

2.      New York State has recognized the coercive power that corrections officers wield over incarcerated women, and the related risk of rape and sexual abuse, and has criminalized all activity between incarcerated individuals and correctional staff in New York Penal Law Section 130.05(3)(f), New York Penal Law Section 130.25(1), and New York Penal Law Section 130.40(1). The City of New York (hereinafter "THE CITY") has enabled a culture of disregard to perpetuate at Rikers Island Prison Complex (hereinafter "Rikers") and thereby enabled and/or constructively consented to the abuse of women in its custody. The City permits a culture of systematic rape and other sexual abuse of women by corrections officers to exist at Rose M. Singer Center (hereinafter "RMSC"), the all-female jail at Rikers Island.

3.      The pervasive culture of rape and other sexual abuse at RMSC is common knowledge within the jail. Supervisory officers facilitate this rape by failing to oversee corrections officers and/or recklessly disregarding such conduct.

4.      Despite being on notice of the widespread misconduct perpetuated by corrections officers at RMSC, defendants THE CITY, THE NEW YORK CITY DEPARTMENT OF CORRECTION (hereinafter "THE DOC"), and NYC CORRECTIONS COMMISSIONER JOSEPH PONTE (hereinafter

"PONTE"), acted with reckless disregard to the substantial risk of harm to Plaintiff.

## JURISDICTION & VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

6.      Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide related claims arising under state law.

7.      Venue is proper in the U.S. District Court Southern District of New York, pursuant to 28 U.S.C § 1391 because the acts in question occurred at Rikers Island, and the defendants are subject to personal jurisdiction in the Southern District of New York.

8.      Upon information and belief, Plaintiff has exhausted all administrative remedies.

## PARTIES

9.      Plaintiff JANE DOE is a citizen of the United States and at all relevant times a resident of the County of Queens and City and State of New York. At all relevant times, Plaintiff was incarcerated at RMSC.

10.     Defendant THE CITY was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11.     Defendant THE DOC is an entity that operates under the auspices of the City of New York.

12.     Defendant PONTE was the Commissioner for the Department of Correction between April 2014 and June 2017. PONTE was responsible for the care, custody, and control of all inmates housed at Rikers Island. He was the commissioner of Rikers Island, and was responsible for the management and control of Rikers Island, and for all matters relating to the placement, supervision, promotion, and discipline of uniformed staff in the jails where female prisoners are confined. PONTE was responsible, along with other Defendants, for the system of complaints, investigations, and discipline of staff misconduct, including sexual harassment and abuse, and for setting the standards by which such complaints are reviewed to determine the actions, if any, to be taken against staff. PONTE was responsible for the policies and practices that have resulted in the deprivation of Plaintiffs' rights under federal law, and he has failed to take necessary and appropriate actions to prevent such deprivation. PONTE violated Plaintiff's rights as described herein.

13.     At all relevant times, Defendant NYC CORRECTIONS OFFICER STEVEN SANTIAGO (hereinafter "SANTIAGO") was and still is a

corrections officer at Rikers Island who violated Plaintiff's rights as described herein.

14.     At all relevant times, Defendant NYC CORRECTIONS OFFICER NANA OSEI (hereinafter "OSEI") was and still is a corrections officer at Rikers Island who violated Plaintiff's rights as described herein.

15.     At all relevant times, Defendant NYC CORRECTIONS OFFICER JOHN DOE (hereinafter "JOHN DOE") was and still is a corrections officer at Rikers Island who violated Plaintiff's rights as described herein.

16.     New York City Corrections Officers STEVEN SANTIAGO, NANA OSEI, and JOHN DOE, were all officers employed by Defendants THE CITY, THE DOC and PONTE from September 2015 through December 2016, who oversaw inmates at RMSC during the time of Plaintiff's incarceration.

17.     The individual defendants, PONTE, SANTIAGO, OSEI and JOHN DOE are sued in their individual and official capacities.

## FACTS INVOLVING DEFENDANT SANTIAGO

18.     Beginning in or around early September 2015, Plaintiff was an inmate at Rikers, and was housed in RMSC.

19.     At or about that time, Defendant SANTIAGO came to Plaintiffs cell while the jail was on lockdown.

20.     Plaintiff recognized Defendant SANTIAGO's name, as she knew his reputation in the jail for sexually abusing other female inmates.

21.     At or about that time, defendant SANTIAGO worked in a different "house," but was in Plaintiff's housing area for the day to fill in for another officer.

22.     At or about that time, during a lockdown, defendant SANTIAGO told Plaintiff to go with him to the pantry to prepare snacks for other inmates who were locked in their cells. Plaintiff reluctantly acquiesced.

23.     After handing out snacks to the other inmates, Plaintiff was escorted by Defendant SANTIAGO back to Plaintiff's cell.

24.     Defendant SANTIAGO stood by the doorway and told Plaintiff to go to the back of her cell where she was out of the view of cameras.

25.     Defendant SANTIAGO ordered Plaintiff to pull down her pants and bend over, facing the wall away from him. Plaintiff, fearing for her safety, did as she was told, then quickly pulled up her pants.

26.     Defendant SANTIAGO again ordered Plaintiff to pull down her pants, and ordered her to touch herself while bent over. Plaintiff reluctantly did as she was told.

27.     After this encounter, Plaintiff was transferred to Defendant SANTIAGO's housing area in House #14.

28.     Shortly after Plaintiff was moved to Defendant SANTIAGO's housing area, Defendant SANTIAGO visited Plaintiff's cell and ordered her to masturbate for him. This occurred approximately three times.

29.     Defendant SANTIAGO would often work inside a central command room commonly referred to as "the bubble" (hereinafter "The Bubble") during his shifts in the housing area.

30.     Inside of The Bubble, corrections officers would oversee the facility through video monitors, as well as would control the locks on inmate's cells.

31.     On multiple occasions, Defendant SANTIAGO unlocked Plaintiff's door from The Bubble and instructed her to come see him there.

32.     During said encounters in The Bubble, defendant SANTIAGO would stream pornographic videos on his personal cell phone and order Plaintiff to touch herself in his presence while he masturbated.

33.     While inside The Bubble, Defendant SANTIAGO warned Plaintiff not to speak to anyone about their sexual encounters.

34.     Defendant SANTIAGO forced Plaintiff to come to The Bubble for sexual encounters approximately six times.

35.     Corrections officers on the floor knew or should have known of Defendant SANTIAGO's sexual abuse of Plaintiff, and other females at the jail, but did nothing to deter the same. Instead,

they turned a blind eye to said abuse, further allowing the conduct to continue.

36.      Defendant SANTIAGO further demanded that when Plaintiff showered she was to pull back the curtain so he could have an unobstructed view of her and other inmates showering.

## FACTS INVOLVING DEFENDANT JOHN DOE

37.      In or around November 2015, Defendant JOHN DOE approached Plaintiff's cell to give her a roll of toilet paper. Defendant JOHN DOE then asked Plaintiff to "show [him] what [she] does for [Defendant SANTIAGO]." He told Plaintiff to take her pants off and masturbate for him.

38.      Defendant JOHN DOE came back to Plaintiff's cell approximately fifteen minutes later and told her to do the same again.

39.      Plaintiff was moved back to her original housing area in House #1, in early December 2015, and her contact with Defendant SANTIAGO and Defendant JOHN DOE temporarily ceased.

40.      In February 2016, Plaintiff was approached by an investigator from the New York City Department of Investigations, who was informed of Defendant SANTIAGO's relationship with Plaintiff. The investigator asked Plaintiff to wear a "wire" to assist in the investigation.

41.     During a subsequent meeting with the investigator, Plaintiff told them about her encounters with Defendant JOHN DOE as well.

42.     In or about April 2016, at the behest of the New York City Department of Investigations, Plaintiff wore a "wire" and was approached by Defendant SANTIAGO. Defendant SANTIAGO told Plaintiff in sum and substance not to tell anyone about their "relationship."

43.     In May of 2016, Plaintiff was contacted by the Bronx District Attorney's Office, who was investigating Defendant SANTIAGO's abuses of several other women at RMSC, including the sexual abuse of Plaintiff.

44.     Plaintiff was concerned for her safety, as she was still an inmate at Rikers Island, and did not receive any type of protection.

45.     To date, neither Defendant SANTIAGO nor Defendant JOHN DOE have been charged with any crime.

46.     Since being sexually abused by Defendants SANTIAGO and JOHN DOE, Plaintiff suffered and continues to suffer severe emotional distress, personal and physical injury, pain and suffering, fear, an invasion of privacy, psychological pain, mental anguish, embarrassment, humiliation, and financial loss.

## FACTS INVOLVING DEFENDANT OSEI

47.      In or around the beginning of September 2016, Plaintiff was still an inmate on Rikers in RMSC.

48.      Defendant OSEI began to pass by Plaintiff's cell and make statements to her in the effect that "she was pretty and that he liked her."

49.      On or about September 29, 2016, Defendant OSEI came to Plaintiff's cell at approximately 3:30 A.M., opened her cell and told her to "wake up." Defendant OSEI ordered Plaintiff to follow him out of her cell.

50.      Defendant OSEI took Plaintiff down the hallway into a broom closet and forced her to have sexual intercourse with him. Defendant OSEI ejaculated into a paper towel.

51.      Defendant OSEI walked Plaintiff back to her cell.

52.      Defendant OSEI returned to Plaintiff's cell approximately one hour later, took plaintiff to the broom closet, and forced her to have sexual intercourse with him again.

53.      On October 8, 2016, Defendant OSEI came to Plaintiff's cell at about 3:30 A.M. and again told her to "wake up."

54.      Defendant OSEI took Plaintiff into the broom closet and forced Plaintiff to have sexual intercourse with him for a second time.

55.      Defendant OSEI then took Plaintiff back to her cell.

56.      Approximately an hour later, Defendant OSEI came back to Plaintiff's cell and took Plaintiff back to the broom closet, where he forced her to have sexual intercourse with him for a third time. Defendant OSEI ejaculated on her back and underwear.

57.      Defendant OSEI left a bag containing tobacco and rolling papers in the broom closet for Plaintiff.

58.      Parts of the aforementioned encounters were captured on hallway video cameras.

59.      After the October 8, 2016 occurrence, sexual intercourse between Defendant OSEI and Plaintiff ceased, but Defendant OSEI brought her, on at least two occasions, cereal boxes containing marijuana, suboxone and tobacco.

60.      Plaintiff did not report the incident while still an inmate at RMSC, because she feared retaliation.

61.       In December 2016, Plaintiff told investigators from the New York City Department of Investigations, for whom she previously agreed to wear a "wire", about her "relationship" with Defendant OSEI.

62.      To date, the Bronx County District Attorney's Office has not charged Defendant OSEI with any crimes related to the sexual abuse and rape of Plaintiff.

63.      THE CITY, THE DOC and PONTE had actual notice that Plaintiff was victimized, in that its own agency, the New York

City Department of Investigations, had conducted a prior investigation regarding same.

### FACTS INVOLVING DEFENDANT PONTE

64.     Upon information and belief, the aforesaid events are not part of an isolated occurrence. Defendant PONTE had notice of the substantial risk of sexual abuse that female inmates face in the Department of Correction's custody through data, statistics, and reports, and through prior and present litigation against the City of New York and Correctional Staff at Rikers Island.

65.     Despite knowing the substantial risk of serious harm from the persistent sexual abuse occurring under their policies and practices, Defendants THE CITY, THE DOC and PONTE have failed to take the reasonable steps necessary to reduce the substantial risk of sexual abuse faced by all women under their custody and control. Defendants have instead relied on a decades-old rule that is "zero tolerance" in name only, lacking the necessary implementation and enforcement of policies and procedures governing supervision, investigation, and discipline of staff that would actually deter and punish staff misconduct. This approach has created a prison culture that is, despite the purported "zero tolerance" position, functionally indifferent to the risk of sexual abuse for female inmates, allowing staff's sexual abuse and harassment of inmates to persist and flourish.

66.      Defendants perpetuate the sexual abuse of female prisoners by creating a culture in which even if such abuse is reported, correction officers are so unlikely to be disciplined for misbehavior that they freely disregard policies governing such behavior. This culture allows so-called "willing" or "consensual" sexual contact to flourish, despite the fact that state law, prison policy, and common sense make clear that women in custody are unable to consent to sexual acts with corrections officers and staff in the coercive prison environment where officers have complete discretion and control over the treatment of prisoners under their supervision. Allowing purportedly "consensual" sexual activity between staff and prisoners to go unpunished sends the message that some level of staff sexual contact with inmates is expected and not worth addressing.

67.      Defendants THE CITY, THE DOC and PONTE failed to protect Plaintiff from sexual harassment; failed to properly investigate, failed to intervene, refer for discipline or prosecute, and failed to take necessary and appropriate action in response to complaints of sexual harassment and abuse of female inmates by male correctional staff, namely JANE DOE and Defendants SANTIAGO, OSEI, and JOHN DOE.

68.      Defendants THE CITY, THE DOC and PONTE negligently and recklessly trained and supervised Defendants SANTIAGO, OSEI, and

JOHN DOE, and caused, permitted, and allowed said defendants to perpetuate the aforementioned abuse.

69.     The individual defendants acted in concert committing the above-described illegal acts towards Plaintiff.

70.     Defendants THE CITY, THE DOC and PONTE knew or should have known that Plaintiff was a victim of sexual abuse by officers, including Defendants SANTIAGO, OSEI, and JOHN DOE, yet did nothing to protect her or ensure her safety as she was victimized by multiple corrections officers on multiple occasions.

71.     The Defendants, SANTIAGO, OSEI and JOHN DOE acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her rights.

72.     As a direct and proximate result of Defendants' actions, Plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## **FIRST CLAIM**

### **(CRUEL AND UNUSUAL PUNISHMENT)**

73.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74.      Defendants SANTIAGO, OSEI, and JOHN DOE sexually used and abused Plaintiff for their own gratification.

75.      Defendants SANTIAGO and JOHN DOE forced Plaintiff to strip and masturbate for them.

76.      Defendant OSEI took plaintiff to a broom closet on several occasions and raped Plaintiff.

77.      Defendants SANTIAGO, OSEI, and JOHN DOE had the intent to use their power and control as corrections officers to humiliate, control, and rape plaintiff.

78.      Plaintiff was demeaned, used for sexual gratification and feared retaliation if she did not comply with the aforementioned sexual demands.

79.      Defendants THE CITY, THE DOC and PONTE knew or should have known of the abuse of JANE DOE, yet disregarded same and allowed Plaintiff to be sexually exploited by their servants, agents and/or employees.

80.      Defendant's conduct shocks the conscious and caused irreparable emotional harm to Plaintiff.

81.      Accordingly, Defendants THE CITY, THE DOC, PONTE, SANTIAGO, OSEI, and JOHN DOE are liable to Plaintiff under New York State Law for cruel and unusual punishment under the Eighth Amendment.

## SECOND CLAIM

### (NEGLIGENT SUPERVISION, HIRING, MONITORING, TRAINING, AND RETENTION OF UNFIT EMPLOYEES)

82.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

83.     That at all of the times hereinafter mentioned, and upon information and belief, Defendants and Defendants' servants, agents and/or employees controlled, supervised, provided security the premises known as RMSC.

84.     That at all times hereinafter alleged and upon information and belief, Defendants, PONTE, THE CITY and THE DOC hired various individuals to provide and perform certain work, labor and/or services at the above-referenced location.

85.     That at all times hereinafter alleged and upon information and belief, Defendants, PONTE, THE CITY and THE DOC failed to properly keep the above reference location in a reasonably safe condition by allowing Defendants SANTIAGO, OSEI, and JOHN DOE to remain employed despite their being unfit to perform certain duties.

86.     Defendants PONTE, THE CITY, and THE DOC are liable to the Plaintiff because the occurrences and injuries sustained by the Plaintiff were caused solely by, and as a result of, the malicious, reckless, negligent and/or intentional conduct of Defendants, its agents, servants and/or employees, as set forth

above, without provocation on the part of Plaintiff contributing thereto, specifically, the negligent and reckless manner, in which said Defendants hired, trained, supervised, controlled, managed, maintained, inspected, and retained its employees.

### THIRD CLAIM

**(INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

87.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

88.     That by virtue of the occurrence, and Defendants, individually and/or by their agents, servants, and/or employees, negligently and/or intentionally inflicted emotional harm upon Plaintiff.

89.     The Defendants SANTIAGO, OSEI, and JOHN DOE's actions against Plaintiff were extreme and outrageous and caused Plaintiff severe emotional distress.

90.     Plaintiff was demeaned, used for sexual gratification and feared retaliation if she did not comply with the aforementioned sexual demands.

91.     The Defendants SANTIAGO, OSEI, and JOHN DOE breached a duty owed to the Plaintiff that either unreasonably endangered Plaintiffs physical safety and/or caused the Plaintiff to fear for her own safety.

## FOURTH CLAIM

### (NEGLIGENCE)

92.      Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

93.      Defendants PONTE, THE CITY, and THE DOC are negligent in hiring and retaining inadequate and incompetent employees; in failing to hire adequate and competent employees; in hiring dangerous employees; in failing to screen potentially dangerous employees; in failing to conduct proper and thorough investigations and background checks of employees hired; in failing to properly monitor and/or supervise employees; in failing to properly train and/or instruct employees; in failing to take adequate precautions and measures to prevent the subject occurrences; in failing to properly supervise Plaintiff; in failing to provide a safe environment for Plaintiff; in failing to provide the proper safety measures to safeguard Plaintiff from abuse and harm; in creating and/or permitting a foreseeably dangerous condition/environment to exist; in failing to adequately, timely and properly protect the plaintiff from being injured, abused and mistreated by its agent(s), servant(s) and/or employee(s); in causing, allowing and/or permitting Plaintiff to be willfully, maliciously, and with gross negligence, physically detained, assaulted, battered, sexually abused and raped; and in

failing to provide medical attention and/or summon appropriate and proper medical attention for Plaintiff.

94.     Defendants PONTE, THE CITY, and THE DOC are liable to plaintiff because defendants owed plaintiff a cognizable duty of care as a matter of law, and breached that duty in allowing said occurrences to take place.

### FIFTH CLAIM

#### (FAILURE TO INTERVENE)

95.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

96.     Defendants THE CITY, THE DOC and PONTE had a reasonable opportunity to prevent the violations of Plaintiff's Constitutional rights, but failed to intervene.

97.     Defendants THE CITY, THE DOC and PONTE had actual and/or constructive notice that Plaintiff was being sexually abused but failed to protect her, causing her to be further victimized.

98.     Accordingly, Defendants THE CITY, THE DOC and PONTE are liable to Plaintiff for failing to intervene to prevent the violation of Plaintiff's constitutional rights.

### SIXTH CLAIM

#### (RECKLESS DISREGARD FOR SAFETY, FAILURE TO PROTECT)

99.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

100.     The Defendants THE CITY, THE DOC and PONTE exercised deliberate indifference and cruelty, extreme recklessness, and intent to a known and probable risk to Plaintiff by failing to take remedial action, and allowing a dangerous environment to become so pervasive at Rikers by allowing sexual assault, sexual abuse, and sexual harassment by correctional staff.

101.     The aforesaid conduct by the Defendants violated Plaintiff's rights under 42 U.S.C. §§ 1983 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

### SEVENTH CLAIM

### (DUE PROCESS)

102.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

103.     At all relevant times, Defendants SANTIAGO, OSEI, and JOHN DOE were acting in their capacity as corrections officers employed by the City of New York

104.     At all relevant times, Defendants SANTIAGO, OSEI, and JOHN DOE were acting under color of law.

105.     At all relevant times, Defendant SANTIAGO, OSEI, and JOHN DOE subjected Plaintiff to sexual abuse and sexual torture.

106.     Defendants THE CITY, THE DOC and PONTE knew or should have known of the abuse of JANE DOE, yet disregarded same and allowed Plaintiff to be sexually exploited by their servants, agents and/or employees.

107.      By virtue of the foregoing rape, sexual abuse, and sexual torture, Plaintiff suffered severe physical harm and continues to suffer psychological and emotional distress.

108.      By virtue of the foregoing, Defendants THE CITY, THE DOC, PONTE, SANTIAGO, OSEI, and JOHN DOE deprived Plaintiff of her due process rights under the Fourteenth Amendment.

### EIGHTH CLAIM

### (FAILURE TO IMPLEMENT POLICIES TO AVOID CONSTITUTIONAL DEPRIVATION)

109.      Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

110.      Despite known risks and incidents of sexual misconduct by staff, Defendants THE CITY, THE DOC and PONTE, through their policies and practices (or lack thereof), have recklessly disregarded these risks, and have failed to protect the female inmates in their custody from harm, namely, JANE DOE.

111.      Defendants THE CITY, THE DOC and PONTE inadequately supervised corrections staff, placing female inmates at a heightened risk of sexual abuse.

112.      Defendants THE CITY, THE DOC and PONTE have failed to enact appropriate rules and policies concerning the behavior of male staff and fail to enforce existing rules and policies governing staff behavior.

113.    Despite knowledge of the risk of sexual abuse in female jails, Defendants THE CITY, THE DOC and PONTE assign male staff to posts on which they have ample opportunity for unmonitored contact with female inmates.

114.    Defendants THE CITY, THE DOC and PONTE have failed to enact adequate rules and policies to monitor and discipline staff engaged in behavior that constitutes warning signs of sexual abuse, such as spending a disproportionate amount of time talking to a particular inmate, discussing their personal lives with inmates, or asking the inmate personal questions. Staff are not disciplined or informally counselled when supervisors witness behavior that is indicative of warning signs of sexual abuse.

115.    Defendants THE CITY, THE DOC and PONTE have failed to enact adequate rules and policies to protect women prisoners from sexual innuendoes, degrading sexual comments, and propositioning, and to enforce those rules and policies that do exist.

116.    Defendants THE CITY, THE DOC and PONTE have failed to enact appropriate rules and policies concerning the behavior of male staff posted to housing units in order to protect the privacy of women prisoners and to protect them from harassment. Defendants also fail to enforce those rules and policies that do exist. For example, DOCCS policy requires male staff to announce their presence only the first time that they enter a living area, allowing male officers to re-enter living quarters and bathroom

areas unannounced, and to watch women dress and undress. Male staff are not disciplined or reprimanded for such conduct.

117.     Defendants THE CITY, THE DOC and PONTE have failed to take sufficient action when officers leave their assigned posts, allow inmates into areas where inmates are not permitted, ask women to volunteer or work on jobs to which they have not been formally assigned, and engage in open and obvious behavior that is clearly suggestive of inappropriate relationships.

118.     Defendants THE CITY, THE DOC and PONTE permit officers virtually unfettered access to private, unmonitored areas such as bathrooms, kitchen store rooms, storage closets, slop sink areas, basements, classrooms, laundry areas, and private areas of prison yards. At the same time, Defendants fail to prohibit officers from being alone with women prisoners in such areas where sexual abuse of women prisoners is easily accomplished. When instances of staff sexual misconduct have been substantiated, they are often found to have occurred in these isolated, and largely unmonitored, areas.

119.     Defendants THE CITY, THE DOC and PONTE fail to require and conduct reasonable searches of correctional staff upon entry to correctional facilities that could help prevent or discourage sexual abuse or ultimately assist in the investigation of allegations of staff sexual misconduct. The failure to catch correctional staff with contraband such as drugs and alcohol, or to limit entry of condoms, cell phones, notes, and other personal

items allows officers the opportunity to use these items to influence, coerce, or otherwise manipulate prisoners into performing sexual acts and limits the evidence that could be used in investigations of staff sexual misconduct.

120.    The aforesaid conduct by the defendants violated plaintiff's rights under 42 U.S.C. §§ 1983 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff demands a jury trial and the following relief jointly and severally against the Defendants:

A. Compensatory damages in an amount to be determined by a jury;

B. Punitive damages in an amount to be determined by a jury;

C. Costs, interests, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

D. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b)(1) and 38(c) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.


DATED:     New York, New York
           October 2, 2017

                              Paul v. Prestia, Esq.
                              Liakas Law, P.C.
                              *Attorneys for Plaintiff*
                              *65 Broadway, 13th Floor*
                              New York, New York 10006
                              (212) 937-7765
                              pp@liakaslaw.com


                              _____/s/_____
                              PAUL V. PRESTIA, ESQ.